| | |
|---|---|
| MARK VIOLETTE,<br>*Plaintiff,*<br><br>v.<br><br>CATALYST SOLUTIONS, LLC,<br>*Defendant.* | 18-cv-1875 (KAD)<br><br><br><br><br><br>June 18, 2019 |

**MEMORANDUM OF DECISION RE:
DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)**

Kari A. Dooley, United States District Judge

**Preliminary Statement of the Case**

The Plaintiff, Mark Violette, brings this action against the Defendant, Catalyst Solutions, LLC, alleging wrongful termination in violation of Section 31-51q of the Connecticut General Statutes[1] (Count One) and wrongful termination in violation of public policy (Count Two). (ECF No. 1-1.) The Defendant moves to dismiss the Plaintiff's Complaint in its entirety. (ECF No. 18.) For the following reasons, the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

**Facts Alleged**

The Defendant, a property management company, hired the Plaintiff in December 2017 to serve as a maintenance supervisor for the Defendant's property at 198-222 South Marshall Street in Hartford. (ECF No. 1-1, ¶¶ 3-5.) There, the Plaintiff oversaw all maintenance and residential repairs. (*Id.* at ¶ 5). In March 2018, the Defendant instructed the Plaintiff to install gas-fired hot water heaters on the property. (*Id.* at ¶ 6.) The Plaintiff "understood that to install such hot water

---

[1] § 31–51q provides in relevant part: "Any employer ... who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge ..."

heaters in the State of Connecticut, a professional license was required." (*Id*. at ¶ 8.) The Plaintiff did not possess the requisite license. (*Id.* at ¶ 9.) The Plaintiff contacted Hartford's licensing department, which confirmed that a professional license was required to install gas-fired hot water heaters. (*Id*. at ¶¶ 10-11.) The Plaintiff thereafter refused to install the heaters.

Later that month, the Plaintiff spoke with the Defendant's Property Manager, Nancy Samarco, and Manager/Vice President, Marci Carbaugh. (*Id.* at ¶¶ 13-14.) The Plaintiff was provided with a "Final Written Warning" – which contained "falsified accusations which were backdated to March 15, 2018" – and then "expressly terminated." (*Id*. at ¶¶ 15-16.) The Defendant "claimed that such termination was for not completing tasks, including not installing water heaters[.]" (*Id*. at ¶ 17.) Although the Plaintiff "expressly informed" Samarco and Carbaugh that a professional license was required, (*id.* at ¶ 18), Carbaugh stated that the Plaintiff was "expected to perform that type of work," (*id.* at ¶ 19.) Samarco told the Plaintiff that another employee of the Defendant had asked her, "What are the chan[c]es of an inspector coming in here?" (*Id*. at ¶ 20.)

**Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all of the Complaint's factual allegations as true when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual

support for such claims, it is appropriate to grant [a] defendant[']s motion to dismiss." *Scott v. Town of Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

**Applicable Law**

    **Count One**

In Count One, the Plaintiff alleges a violation of § 31-51q insofar as he was terminated for challenging the directive that he install gas-fired hot water heaters without a license. He alleges that in so doing, he was exercising "his rights under United States and Connecticut Constitutions." (*Id.* at ¶ 22.) Accordingly, the Court's analysis will be guided by both the First Amendment and the Connecticut Constitution, as discussed below.

    *First Amendment*

In *Schumann v. Dianon Systems, Inc.*, 304 Conn. 585, 598 (2012), the Connecticut Supreme Court concluded that the holding of the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), that speech pursuant to a public employee's official job duties is not protected by the First Amendment, applies to claims brought pursuant to § 31–51q against a private employer. The Connecticut Supreme Court further observed that *Garcetti* requires courts to determine, in the first instance, whether an employee is speaking pursuant to his official duties before turning to the remainder of the First Amendment analysis.[2] *Schumann v. Dianon Systems, Inc.*, 304 Conn. at 604.

---

[2] It is unclear whether the Defendant advances an argument under *Garcetti* and the requirement that the Court assess this threshold issue. The Defendant speaks principally to whether the Plaintiff has alleged speech on a matter of public concern. However, the Plaintiff raised the question of speech pursuant to official duties and the Court therefore includes a discussion thereon.

"[W]hen … employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Garcetti*, 547 U.S. at 421).

In rendering this determination, courts are directed to answer the question of whether the speech fell outside of the employee's official responsibilities. *Garcetti* counseled "a functional approach toward evaluating an employee's job duties." *Id.* at 173. If an employee's "expressions were made pursuant to his duties," they would not be protected. However, while job descriptions are "relevant to the inquiry, the Court cautioned that, '[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform' and 'the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.'" *Id.* (quoting *Garcetti*, 547 U.S. at 424-25). The analysis is a "practical one." *Id.* Even where speech is not required by the job, it may "still be 'pursuant to official duties' so long as it is in furtherance of such duties." *Weintraub v. Bd. of Educ. Of City School Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010). Practical considerations include the employee's level of responsibility and the context in which the statements were made. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 140-141 (2d Cir. 1999).

In addition, to be protected under the First Amendment, an employee's speech must be on a matter of public concern. *Matthews*, 779 F.3d at 172. "It is within the province of the trial court to determine, as a matter of law, which topics are considered to be of public concern." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 782 (1999). In *Daley*, the Connecticut Supreme Court held that § 31-51q "safeguard[s] statements made by an employee that address a matter of public

concern, but provide no security with respect to statements that address wholly personal matters." *Id.* at 778. "Speech that addresses a matter of public concern involves statements that can 'be fairly considered as relating to any matter of political, social, or other concern to the community[.]" *Id.* at 779 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The determination is made by evaluating the content, form, and context of a given statement, as revealed by the whole record. *Id*. However, "[i]t is well settled that internal employment policies are not a matter of public concern." *Id*. at 783.

In sum, if an employee's speech was not made pursuant to his official job duties and touched on a matter of public concern, it is protected under the First Amendment and recourse is available under § 31-51q. If afforded such protection, the employer's ability to regulate such speech or discipline an employee for engaging in such speech is then subject to a balancing of the employee's rights against the employer's interest in "latitude to manage their offices, without intrusive oversight by the judiciary." *Id.*; *see also Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 150 (1983).

*Connecticut Constitution*

For claims premised upon protected speech under the Connecticut Constitution (as opposed to the First Amendment), the analysis is different. In *Trusz v. UBS Realty Investors, LLC*, 319 Conn. 175, 179 (2015), the Connecticut Supreme Court held that the rule of *Garcetti* does not apply to § 31–51q claims against a private employer where the claims are based on the Connecticut Constitution. Thus, the threshold analysis of whether the speech was pursuant to official job duties is not required and such speech may still be protected by the state constitution. *Id.* Whether such speech is protected is determined by applying a modified form of the *Pickering/Connick* balancing test. *Id.* "[U]nder the *Pickering/Connick* balancing test, employee speech in a public workplace is

5

protected from employer discipline if it involves a matter of public concern and if the employee's interest in commenting on the matter outweighs the employer's interest in promoting the efficient performance of public services." *Id*. at 184. The *Trusz* decision modified this test to include a further requirement that the speech in question involve comment upon "official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety." *Id*. at 216-17. The *Trusz* standard applies to the private workplace even when an employee is speaking pursuant to official job duties. *Id.* "Thus, … speech pursuant to an employee's official duties regarding, for example, a mere policy disagreement with the employer would not be protected, even if it pertained to a matter of public concern and had little effect on a legitimate employer interest." *Id.* at 204. It is protected however, even when an employee speaks pursuant to her official duties, if it involves a matter of public concern and is comment on "official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety." *Id.* at 216-17; *see also Blue v. City of New Haven*, No. 3:16-CV-1411 (MPS), 2019 WL 399904, at *8 (D. Conn. Jan. 31, 2019).

**Discussion**

As indicated, the Plaintiff's statutory claims are based upon both the First Amendment as well as the Connecticut Constitution. The Defendant asserts that Plaintiff has only alleged "a purely personal dispute with Defendant regarding his work duties," and as such cannot invoke the protections of Section 31-51q. The Plaintiff counters that he has alleged that he was speaking as a citizen about a matter of public concern. He asserts that his speech did not reflect a "mere policy difference" between he and his employer, but rather related to a matter of public concern *and* implicated his employer's "official dishonesty … other serious wrongdoing, or threats to health and safety[.]" *Trusz*, 319 Conn. at 175.

*First Amendment – Garcetti's Threshold Inquiry*

Here, as noted, the Plaintiff alleges that he was speaking as a citizen and not pursuant to his official job duties. At this stage of the proceedings, the record is not adequate for the Court to determine whether his speech was pursuant to, or fell within, his job requirements and responsibilities. *See Matthews v. City of New York,* 488 F. App'x 532, 533 (2d Cir. 2012) (Dismissal vacated and case remanded because "the record … is not yet sufficiently developed … to determine as a matter of law whether [plaintiff] spoke pursuant to his official duties when he voiced the complaints," and discovery was necessary as to "the nature of the plaintiff's job responsibilities, the nature of the speech and the relationship between the two.").

*First Amendment/Connecticut Constitution - Matter of Public Concern*

The Plaintiff, concerned with his ability to legally carry out his instructions, called the licensing department of the City of Hartford to determine whether a professional license was required to install gas-fired water heaters. Upon learning that such a license was required, he expressly informed the Defendant that a license was required and that he could not perform the installations. It may reasonably be inferred that the license requirement reflects a legislative determination that a certain recognized skillset is necessary to safely install gas-fired water heaters. The Plaintiff asserts that he was terminated for voicing his concerns about the Defendant's instruction that he illegally install the gas-fired hot water heaters. From these allegations, the Plaintiff argues that his speech concerned the safety and health of not just himself but everyone in the Defendant's apartment building who could have been injured had the Plaintiff installed a gas-fired water heater without the proper training and license for doing so.

On this issue, the Court finds the holding in *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201 (2d Cir. 2002) instructive. There, a transit worker's complaints about safety problems with public

transportation trains, to include employees being required to operate trains without brakes, work without respiratory equipment, and operate in dangerous proximity to a live third rail, amounted to more than personal grievances. *Id.* at 212. "If one needed to consult more than common sense, one would need look no farther than the existence of laws such as the Occupational Safety and Health Act of 1970, 28 U.S.C. § 651 *et seq.* (1994), and similar state laws, *see, e.g.,* N.Y. Lab. Law § 202 *et seq.* (McKinney Supp.2001), to recognize that safety in the workplace is a matter of public concern." *Id.*

Here, too, a purported violation of state licensing statutes implicates safety concerns. *See* Conn. Gen. Stat. §§ 20-330, 20-333, 20-334.[3] It is manifest that the installation of gas-fired water heaters by someone not approved and licensed to do so concerns not only workplace safety but also the safety of residents in the building at which the installation is to occur. *See, e.g.*, *Guimard v. Falcon Fin.*, No. FSTCV054003828S, 2005 WL 3663665, at *1 (Conn. Super. Ct. Dec. 16, 2005) (Statements regarding safety matters affecting the general public have been found to be matters of public concern.); *Lowe v. AmeriGas, Inc.*, 52 F.Supp.2d 349, 359 (D. Conn. 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000) ("Plaintiff's complaints about safety concerns regarding the improper storage of a hazardous substance such as propane, however, implicate matters of public concern and, thus, constitute protected speech."); *Kennedy v. Coca-Cola Bottling Co. of New York*, 170 F.Supp.2d 294, 299 (D. Conn. 2001) (holding that plaintiffs' concerns about "safety issues that

---

[3] Under Conn. Gen. Stat. § 20-330(3), "[p]lumbing and piping work" includes the "installation … of gas, water and associated fixtures." Pursuant to Conn. Gen. Stat. § 20-334(a), "No person shall engage in, practice or offer to perform the work of any occupation subject to this chapter in this state … unless such person has first obtained a license as provided in section 20-333." Section 20-333(a) requires that a prospective applicant for licensure must "furnish such evidence of competency as the appropriate board or the Commissioner of *Consumer Protection* shall require." Conn. Gen. Stat. § 20-333(a) (emphasis added). "The applicant shall satisfy such board or the commissioner that such applicant is of good moral character, possesses a diploma or other evidence of graduation from the eighth grade of grammar school, or possesses an equivalent education to be determined one examination and has the requisite skillset to perform the work in the trade for which such applicant is applying and can comply with all other requirements of this chapter and the regulations adopted under this chapter." *Id.*

8

would affect the entire workplace and potentially the public" were "not matters of purely private concern relating solely to the plaintiffs' employment" and thus constituted protected speech). The allegations, construed in the Plaintiff's favor, reflect more than a mere personal dispute with the Defendant and raise, at least at this juncture, a matter of public concern.

*Connecticut Constitution – Matters Involving Official Dishonesty, Serious Wrongdoing, or Threats to Health and Safety*

As held above, the matter of public concern was also one regarding a threat to health and safety of not only the Plaintiff but of the residents of the property under management. This alone satisfies the additional requirement under *Trusz*. However, the Plaintiff also alleges that an employee of the Defendant commented on the likelihood of an inspector arriving at the property in relation to the Plaintiff's unlicensed installation of the hot water heaters. The reasonable inference to be drawn from this allegation is that the Defendant was aware of the illegality of the instruction and was not deterred. This allegation is sufficient to implicate both dishonesty and serious wrongdoing, either of which also satisfies the additional requirement under *Trusz. See, e.g.*, *Trusz v. UBS Realty Inv'rs*, No. CIV3:09CV268JBA, 2010 WL 1287148, at *9 (D. Conn. Mar. 30, 2010) ("When employees speak out about potentially illegal activities of their employers that affect third parties or the community at large, courts have held that public concerns are implicated.").

*Conclusion*

Whether the Plaintiff's speech was made pursuant to his job responsibilities for purposes of the First Amendment cannot be decided at this stage of the proceedings. The Plaintiff has adequately alleged that he was speaking on a matter of public concern. The Plaintiff has adequately

alleged that the speech concerned either dishonesty, serious wrongdoing and/or threats to health and safety. Accordingly, the Defendant's motion to dismiss is DENIED as to Count One.

**Count Two**

In Count Two, the Plaintiff claims he was wrongfully discharged in violation of public policy in retaliation for refusing to install gas-fired water heaters without a license. Specifically, he alleges that the Defendant terminated him "due to his refusal to violate Connecticut General Statute § 20-334," (ECF No. 1-1, ¶ 33), and that such termination was "in violation of the Occupational Health and Safety Act," (*id*. at ¶ 32).

To prevail on a claim for wrongful termination in violation of public policy, a plaintiff must establish that he was discharged for "a reason whose impropriety is derived from some important violation of public policy." *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475 (1980). However, the "public policy exception to the at-will doctrine is available only in cases in which there are no other available remedies and 'permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.'" *Campbell v. Town of Plymouth*, 74 Conn. App. 67, 74 (2002) (quoting *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 648 (1985)). Consequently, if a statutory remedy is available, the Plaintiff cannot resort to the common law tort of wrongful termination and must rely on that statutory remedy. *See, e.g.*, *Pickering v. Aspen Dental Mgmt., Inc.*, 100 Conn. App. 793, 796-99 (2007) (dismissing common law public policy claim where the plaintiff could assert claims under § 51-247a(d)-(e) for his employer's alleged violation of Conn. Gen. Stat. § 51-247a); *Storm v. ITW Insert Molded Prod., a Div. of Ill. Tool Works, Inc.*, 400 F.Supp.2d 443, 447-48 (D. Conn. 2005) (dismissing claim where federal and state statutes provided remedies for age discrimination); *Armstead v. Stop & Shop Cos.*, No. 3:01 CV

1489 JBA, 2003 WL 1343245, at *3 (D. Conn. Mar. 17, 2003) (dismissing claim where federal and state statutes provided remedies for disability discrimination).

Here, the Defendant asserts that the Plaintiff's statutory claim under § 31-51q precludes his common law wrongful discharge. Courts have consistently held that a wrongful discharge claim premised on a violation of free speech is precluded in light of the alternative remedy afforded by § 31-51q. *See Gunn v. Penske Auto. Grp., Inc.*, No. 3:17-CV-757(AWT), 2018 WL 7374285, at *3 (D. Conn. Mar. 30, 2018) ("the court concludes that the plaintiff has stated a claim for violation of Conn. Gen. Stat. § 31-51q. Consequently, he cannot bring a wrongful discharge claim."); *Horton v. Windham Cmty. Mem'l Hosp.*, No. 4006020, 2007 WL 1121469, at *4 (Conn. Super. Ct. Mar. 29, 2007) (holding common law wrongful discharge claim precluded by claim under § 31-51q); *King v. Connection, Inc.*, No. CV106015682S, 2011 WL 3211250, at *7 (Conn. Super. Ct. June 20, 2011) ("concluding common-law wrongful termination claim and free speech claim under General Statutes § 31–51q shared same causal relationship and plaintiff could not simultaneously pursue common-law claim when statutory claim provides remedy). As in *Gunn*, the Plaintiff has stated a claim for violation of § 31-51q. And as in *King*, the Plaintiff's common-law wrongful termination claim is "based upon the same conduct and underlying policy considerations as [his] free speech claim." *King*, 2011 WL 3211250, at *7. Accordingly, the motion to dismiss is GRANTED as to Count Two.

For the foregoing reasons, the Defendant's Motion to Dismiss (ECF No. 18) is **GRANTED in part and DENIED in part.** Specifically, the Motion is **DENIED** as to Count One and **GRANTED** as to Count Two.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of June 2019.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE